**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael Allen VASEY,
Defendant–Appellant.**

**No. 86–3157.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1987.

Decided Dec. 15, 1987.

Francis J. Diskin, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Richard Hansen, Seattle, Wash., for defendant-appellant.

Before FLETCHER and NORRIS, Circuit Judges, and MacBRIDE,* Senior District Judge.

MacBRIDE, Senior District Judge.

Michael Allen Vasey appeals the denial of his motion to suppress evidence seized from his vehicle by police officers after he was stopped for a routine traffic violation and arrested on an outstanding felony drug warrant. The police conducted a warrantless search of the vehicle at the arrest site and a subsequent, more thorough search after impounding the vehicle and obtaining a search warrant. The district court initially found that both the warrantless and the warrant searches of the vehicle violated Vasey's Fourth Amendment rights and granted the motion to suppress. Upon the government's motion to reconsider, the district court reversed itself and found that the warrantless search was proper as a search incident to arrest and that the search warrant was valid so as to permit the subsequent search. Defendant entered a conditional guilty plea pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure whereby he preserved his right to appeal the denial of his suppression motion. This appeal resulted.

## I. FACTUAL BACKGROUND

Vasey was driving a vehicle near Woodinville, Washington at approximately 9:27 a.m. He was observed speeding by King County Police Officer William Jensen and pulled over. As he approached the vehicle, Officer Jensen believed he saw Vasey stuffing his hand between the seats and handling something furtively on the right rear floorboard. Vasey contends he was merely unfastening his seatbelt and reaching for his wallet to retrieve his license. Officer Jensen asked for and was given Vasey's driver's license. Officer Jensen returned to his patrol car and radioed a dispatcher to perform a warrants check. This check revealed an outstanding warrant from Snohomish County, Washington, for the arrest of Vasey for possession of dangerous drugs. Officer Jensen promptly arrested Vasey, patted him down, and handcuffed him. During the patdown, Officer Jensen found $1,128 in currency. Vasey, still handcuffed, was placed in the rear of the patrol car. Officer Jensen asked Vasey if he would consent to a search of the vehicle and Vasey refused until he could consult with an attorney.

Officer Jensen radioed for assistance and was joined by King County Sargeant Jerry Lane at approximately 9:47 a.m. Officers Jensen and Lane, suspicious that Vasey was engaged in drug-related activity, looked through the window of Vasey's vehicle and spotted a sealed container of pills. The container bore a printed label identifying the pills as a food supplement, but it is unclear to what extent this label was visible from the officers' position outside the vehicle. The officers returned to the patrol car and questioned Vasey about the pills. Vasey correctly identified the pills as a food supplement he sold for a company called "Good For You America" and gave the officers the name and number of his employer to verify his employment.

Still suspicious of drug-related activity, the officers decided to impound the vehicle. In compliance with local police impoundment procedures, the officers entered the vehicle to inventory its contents. This warrantless search was conducted anywhere from thirty to forty-five minutes after Vasey had been arrested and placed in the rear of the patrol vehicle. Upon finding $5,000 underneath the driver's seat and a gold watch, the officers terminated the search and decided to obtain a warrant before resuming their search. After the partial inventory search had ended but before the car was towed, Officer Jensen observed on the console a container the size of an audio cassette. The container bore a "Good For You America" label and contained three white pills. The pills had the word "aspirin" imprinted on them. It is

* Honorable Thomas J. MacBride, Senior United States District Judge, Eastern District of California, sitting by designation.

unclear whether Officer Jensen noticed this designation on the pills.

Officer Jensen prepared an affidavit outlining the events up to that point in time, including the discovery of the $5,000 and the gold watch in the warrantless search. A warrant was issued by a Washington Superior Court Judge on the basis of this affidavit. A search of the vehicle conducted pursuant to the warrant uncovered $71,111 in currency and three kilograms of substance later found to contain cocaine.

Vasey moved to suppress all evidence seized from the vehicle on the grounds that the searches violated both the Fourth Amendment to the United States Constitution and the warrantless search provisions of the Washington State Constitution. The government countered that the warrantless search was justified as an inventory search, *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and that the subsequent search was proper because it was conducted pursuant to a valid search warrant. In its Findings of Fact and Conclusions of Law dated March 25, 1986, the district court found that the warrantless search could not be justified under any exception to the Fourth Amendment Warrant Requirement. Specifically, the search was not a proper inventory search because it was conducted to search for evidence rather than to inventory the contents of the vehicle. *United States v. Hellman*, 556 F.2d 442, 444 (9th Cir.1977). The search could not be justified as a search incident to Vasey's arrest because Vasey had already been handcuffed and placed in the rear of the police vehicle at the time the search was conducted. Since the $5,000 and the gold watch were found during an illegal search, any reference to these items should have been excluded from Jensen's affidavit for the search warrant. Without this information, the district court found there was not probable cause to issue the warrant and ruled the warrant was invalid and all evidence discovered in the search conducted pursuant to the warrant must be suppressed.

The government filed a motion to reconsider and argued, *inter alia*, that the war-rantless search of Vasey's vehicle was proper as a search incident to arrest under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). In an order dated May 22, 1986, the district court reversed itself and found that the warrantless search was proper as a search incident to arrest and that Officer Jensen's reference in his affidavit to the evidence found in the warrantless search was proper. With this evidence in the affidavit, the district court ruled that the warrant was valid and that all evidence seized pursuant to the warrant was admissible. The motion to suppress was denied.

Vasey appeals this denial of his motion to suppress. We REVERSE and REMAND.

## II. STANDARD OF REVIEW

The government must prove the existence of an exception to the Fourth Amendment Warrant Requirement by a preponderance of the evidence. *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *United States v. Whitten*, 706 F.2d 1000 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). The ultimate issue of the lawfulness of a search presents a mixed question of law and fact which a circuit court reviews *de novo*. *United States v. Jarrad*, 754 F.2d 1451, 1454 (9th Cir.), *cert. denied*, 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985).

## III. LEGALITY OF THE WARRANTLESS SEARCH

Appellant Vasey argues that the war-rantless search of his vehicle was not proper under the Fourth Amendment to the United States Constitution as a search incident to arrest because the search took place anywhere from thirty to forty-five minutes after he was arrested, handcuffed, and placed in the rear of a police vehicle. Even if the search was proper under the United States Constitution, appellant contends, the search was invalid under the stricter warrantless search standards established by Article One, Section 7 of the Washington State Constitution. The

government counters that the search was proper under the bright line search incident to arrest rule established in *New York v. Belton, supra.*

The starting point for any search incident to arrest analysis is *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In *Chimel,* the defendant was arrested in his home for burglary of a coin shop. After the arrest, police officers conducted a warrantless search of defendant's entire three bedroom house, his garage, and a workshop under the auspice of a search incident to arrest. The Supreme Court held that the search was too broad to be justified as a search incident to arrest and was therefore unreasonable under the Fourth and Fourteenth Amendments. *Chimel* at 768, 89 S.Ct. at 2043. In attempting to clarify the scope of the search incident to arrest exception, the Court ruled that pursuant to an arrest, officers may search the area into which an arrestee might reach to grab a weapon or evidentiary item (i.e. "grabbing area"). *Chimel* at 762–63, 89 S.Ct. at 2040.

In *New York v. Belton, supra,* the Supreme Court applied the search incident to arrest exception to a car after an occupant of the car had been arrested. In *Belton,* a police officer pulled over a speeding vehicle. While checking the driver's license, the officer smelled the odor of marijuana coming from the car and noticed an envelope in the car marked "Supergold" that he associated with marijuana. Based on these observations, the four occupants of the car were arrested, searched, and separated on the highway so that they would not be within touching distance of one another. The officer then searched the passenger compartment of the vehicle and found appellant's jacket in the back seat. He unzipped a pocket of this jacket and found cocaine. Appellant sought to suppress the cocaine on the grounds that it was seized during an illegal search. The Court held that an officer who has made a lawful custodial arrest of the occupant of a vehicle may, as a contemporaneous incident of the arrest, search the passenger compartment of the vehicle. *Belton,* 453 U.S. at 460, 101 S.Ct. at 2864. The Court was

careful not to alter the fundamental grabbing area principle established in *Chimel. Id.* at n. 3. The Court stayed within the *Chimel* guideline by reasoning that "articles within the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m]' *Chimel,* 395 U.S. at 763, 23 L.Ed.2d 685, 89 S.Ct. 2034." *Id.* at 460, 101 S.Ct. at 2864.

In reaching its holding, the *Belton* Court struck a balance between two competing interests: (1) preserving the limited scope of a search incident to arrest so as to protect individual privacy interests established by the Fourth Amendment and (2) providing law enforcement personnel with a bright line standard to aid them in determining whether a search is proper as a search incident to arrest. In assessing the validity of the warrantless search of Vasey's vehicle, this court is mindful of these important considerations.

The *Belton* Court did not completely abandon Fourth Amendment privacy rights at the expense of establishing a bright line test for law enforcement personnel. This is shown by the Court's adherence to the narrow scope of the search incident to arrest exception espoused in *Chimel* and by the Court's explicit directive that a search be conducted contemporaneously with the arrest. The *Belton* holding does have limits and those limits were exceeded here. The warrantless search in this case violated the *Chimel* principle and was not conducted contemporaneously with the arrest.

The court in *United States v. McConney,* 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), provided a useful guide in determining the *Chimel* scope of a search incident to arrest. In *McConney,* the defendant was arrested and ordered by several agents with drawn guns to move to a position on the floor next to a sofa. The defendant was not yet handcuffed when an agent searched the sofa and found a handgun. The defendant moved to suppress the handgun on the grounds that it was seized

during an illegal warrantless search. The court held that the search was proper as a search incident to defendant's arrest. *McConney* at 1207. The court found that the critical inquiry in determining the propriety of a search incident to arrest is whether the search was properly limited to the area within the arrestee's immediate control. *Id.* The court set forth several factors to consider in making this inquiry: the number of persons being arrested, the number of officers present, the officer(s)' physical positioning with regard to the arrestee and the place searched, the display of guns by the officers, and the distance between the arrestee and the place searched. *Id.*

■ Applying these factors to the instant case, it is evident that the search was not properly limited to the area within Vasey's immediate control. Vasey was the only person arrested. Vasey was handcuffed and located in the rear of a police vehicle when the search occurred. Two armed officers, Jensen and Lane, conducted the search of Vasey's vehicle while Vasey remained handcuffed in the rear of the police vehicle. When the officers were not searching Vasey's vehicle, they were positioned outside the police vehicle such that if Vasey did somehow manage to escape the confines of the car, he would have easily been stopped by the officers before reaching his vehicle. It was readily apparent to the officers and to this court that Vasey had virtually no opportunity to reach into his vehicle at the time the search occurred. While the *McConney* court did correctly note that the *Chimel* principle does not require police to presume that a person is wholly rational during or after an arrest, *McConney* at 1207, *Chimel* does not allow the officers to presume that an arrestee is superhuman. Vasey's arrest did not signal the end of his Fourth Amendment rights and these rights were violated by the officers' search of his vehicle.

The search also falls outside the *Belton* prophylactic rule because it was not conducted contemporaneously with the arrest. This court is mindful of the fact that officers should not be forced to make difficult legal decisions during the often-volatile circumstances of an arrest. If the *Chimel/Belton* doctrine is read too strictly, officers will be wary of conducting searches incident to an arrest at the risk of endangering themselves and others. It was upon this consideration that several courts have held that a search of an automobile may be conducted as a search incident to arrest even when the arrestee has been taken from a vehicle and handcuffed. *United States v. McCrady,* 774 F.2d 868, 871–72 (8th Cir.1985); *United States v. Cotton,* 751 F.2d 1146, 1149 (10th Cir.1985); *United States v. Abel,* 707 F.2d 1013, 1015, n. 3 (9th Cir.1983), *rev'd on other grounds,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). These cases are distinguishable, however, because the searches in these cases followed closely on the heels of the arrest.

■ In this case, the search took place anywhere from thirty to forty-five minutes after Vasey had been arrested, handcuffed, and placed in the rear of the police vehicle. The officers conducted several conversations with Vasey while he was in the police vehicle. They exhibited no fear nor testified to any fear that Vasey would try to get out of the police vehicle to grab a weapon or evidence. In fact, the officers attempted to justify their search as an inventory conducted in accordance with local police procedure, not as a search incident to arrest. During the thirty to forty-five minutes that elapsed between the arrest and the warrantless search, the *Belton* Court's fear of forcing officers to make split second legal decisions during the course of an arrest evaporated and took with it the right of the officers to enter the vehicle under the guise of a search incident to arrest. Simply because the officers had the right to enter the vehicle during or immediately after the arrest, a continuing right was not established to enter the vehicle without a warrant. We do not hold that once an arrestee is handcuffed, all rights to search the vehicle vanish. Rather, the circumstances of the arrest dictate whether the

search was proper and conducted contemporaneously with the arrest.

At oral argument, the government argued that under *Belton*'s bright line rule, a search of a vehicle is proper as a search incident to arrest if the arrestee is still at the arrest site. We do not find such a rule in *Belton*. The *Belton* Court explicitly admonished that the search had to be conducted contemporaneously with the arrest. The government, in effect, asks us to transform the search incident to arrest exception into a search *following* arrest exception. This we decline to do.

Since the warrantless search of Vasey's vehicle was illegal, all evidence seized during this search must be suppressed.[1]

## IV. VALIDITY OF THE WARRANT SEARCH

▆▆▆ All evidence Officer Jensen seized during the illegal warrantless search was tainted and should not have been included in the affidavit for a search warrant. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant. *United States v. Driver*, 776 F.2d 807 (9th Cir.1985). A reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant. *Id.*

The district court found in its Findings of Fact and Conclusions of Law that once any reference to the $5,000 and the gold watch discovered in the warrantless search was excised from the affidavit, the remaining

statements of fact in the affidavit would not establish probable cause to issue the warrant. Reviewing the affidavit *de novo*, we concur.

The affidavit contained the following untainted facts:

(1) As Officer Jensen approached the vehicle, he noticed Vasey stuffing his hand between the seats and handling something furtively on the right rear floorboard. Vasey contends he was reaching for his wallet and unfastening his seatbelt; (2) Vasey had an outstanding warrant for his arrest on a drug-related charge; (3) Vasey was carrying $1,128 in cash; (4) Officer Jensen noticed a sealed container of pills and a small, cassette-sized container holding three pills. The three pills were imprinted with the word "aspirin", but it is unclear to what extent Officer Jensen saw this imprintation; and (5) Officer Jensen had several years of police experience.

This evidence must be viewed in light of the district court's finding that in his affidavit and in his testimony at the suppression hearing, Officer Jensen lied when he said he gave Vasey the option of not having his car impounded as he was required to do by local police procedures.

▆▆ The five factors set out above are insufficient to establish probable cause for the issuance of a warrant. There is little or no evidence indicating that Vasey's car contained contraband. Although Officer Jensen was justified in his suspicion that Vasey was involved in narcotics-related activity, mere suspicion does not rise to the level of probable cause. *United States v. Condo*, 782 F.2d 1502, 1507 (9th Cir.1986); *United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1434 (9th Cir.1985).[2]

---

1. Our holding that the warrantless search violated appellant's Fourth Amendment rights makes it unnecessary to determine the validity of the warrantless search under the standards set forth in Article One, Section 7 of the Washington State Constitution.

2. This court requested supplemental briefing on whether the search of the vehicle could be justified under the automobile exception to the

Fourth Amendment warrant requirement. After reviewing the briefs and assessing counsels' oral arguments, we find that there was not probable cause for a magistrate to have issued a warrant and, therefore, the warrantless search could not be justified by the automobile exception. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

## V. GOOD FAITH EXCEPTION

 The government argues that even if the affidavit in support of the search warrant did not contain sufficient facts to establish probable cause, the evidence seized in the search conducted pursuant to the warrant should be deemed admissible by operation of the good faith exception to the exclusionary rule, *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). This argument is without merit. The *Leon* Court held that the Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecutor's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. *Leon* at 900, 926, 104 S.Ct. at 3409, 3422. The *Leon* analysis and good faith exception are not applicable to this case.

The fact that Officer Jensen conducted a warrantless search of the vehicle which violated Vasey's Fourth Amendment rights precludes any reliance on the good faith exception. In *Leon,* the officer presented lawfully obtained evidence to a neutral magistrate. The magistrate erroneously found that this evidence established probable cause and consequently issued a warrant. Subsequently, a reviewing court ruled that the evidence presented to the magistrate did not establish probable cause and the warrant should not have been issued. The evidence obtained in the warrant search was deemed admissible by the *Leon* Court, however, because the officer acted in good faith. The officer acted in good faith both in gathering and presenting evidence to a neutral magistrate. The only error in the entire process was the magistrate's erroneous finding that the evidence established probable cause.

The instant case differs. Officer Jensen conducted an illegal warrantless search and presented tainted evidence obtained in this search to a magistrate in an effort to obtain a search warrant. The search warrant was issued, at least in part, on the basis of this tainted evidence. The constitutional error was made by the officer in this case, not by the magistrate as in *Leon.* The *Leon* Court made it very clear that the exclusionary rule should apply (i.e. the good faith exception should not apply) if the exclusion of evidence would alter the behavior of individual law enforcement officers or the policies of their department. *Leon* at 918, 104 S.Ct. at 3418. *See also United States v. Whiting,* 781 F.2d 692 (9th Cir.1986) (finding *Leon* inapplicable to warrantless search). Officer Jensen's conducting an illegal warrantless search and including evidence found in this search in an affidavit in support of a warrant is an activity that the exclusionary rule was meant to deter.

 Further, we conclude that the magistrate's consideration of the evidence does not sanitize the taint of the illegal warrantless search. A magistrate's role when presented with evidence to support a search warrant is to weigh the evidence to determine whether it gives rise to probable cause. A magistrate evaluating a warrant application based in part on evidence seized in a warrantless search is simply not in a position to evaluate the legality of that search. Typically, warrant applications are requested and authorized under severe time constraints. Moreover, warrant applications are considered without the benefit of an adversarial hearing in which the evidentiary basis of the application might be challenged.[3] Although we encourage magistrates to make all possible attempts to ensure that a warrantless search was legal before relying on the fruits of that search, we are mindful of the limitations on a magistrate's fact-finding ability in this context. We therefore conclude that a magistrate's consideration does not protect from exclusion evidence seized during a search

---

**3.** We recognize that magistrates must rely on one-sided information provided by officers in determining whether facts give rise to probable cause. But in typical probable cause decisions, an officer does not describe his *own* acts or the

under a warrant if that warrant was based on evidence seized in an unconstitutional search. Accordingly, the good faith exception should not and will not be applied to the facts of this case.[4]

REVERSED and REMANDED.

acts of a fellow officer, but rather acts or observations of other people.

**4.** Even if we were to apply *Leon,* we would reverse the district court's decision. In his affidavit, Officer Jensen's primary contention was that his warrantless search of Vasey's vehicle was proper as a routine inventory search. A warrantless inventory search of a vehicle is proper if the automobile is impounded pursuant to standard police procedures and is made without investigatory intent. *South Dakota v. Opperman, supra,* 428 U.S. at 375–76, 96 S.Ct. at 3100, 49 L.Ed.2d at 1008–09. King County police procedures provide that vehicles should be impounded only as a "last resort" and that an officer should not impound a vehicle without first explaining to an arrestee that the vehicle need not be towed if the arrestee would merely sign an impound waiver exonerating the county from liability for leaving the vehicle unattended at the arrest site. King County Department of Public Safety Manual, Section 8.2.0. In his affidavit, Officer Jensen wrote: "Vasey stated he wanted the truck towed because he didn't want it left there." At the suppression hearing, Officer Jensen reiterated this claim by testifying: "Mr. Vasey made it have (sic) clear to me that he did not want his vehicle left there ... Well, specifically I asked him [Vasey], I says, 'will you sign a waiver so we wouldn't have to impound it.' He said 'no, I don't want the vehicle left there.' Or left 'here' actually. He wanted it towed, [he] specifically told me that." Suppression Transcript at 20, 21–22.

By his statement in the affidavit that Vasey wanted his vehicle towed, Officer Jensen represented to the magistrate that the warrantless search of Vasey's vehicle was proper under local police impoundment procedures and under the Fourth Amendment as an inventory search. The district court, however, specifically found that Vasey, in fact, "repeatedly requested that his truck be locked and left at the side of the road" and that "Officer Jensen did not explain to the defendant the options open to him nor present defendant with the option of signing the impound waiver in order to avoid having his truck impounded." Order dated May 22, 1986 at p. 4. Officer Jensen misrepresented the legality of the warrantless search of Vasey's vehicle. The magistrate, it can be assumed, relied on Officer Jensen's implicit claim of the legality of the search and considered the evidence found in this search in assessing whether probable cause existed to issue the warrant. In fact, Officer Jensen knew he had no right to impound Vasey's vehicle and thereby inventory the contents of the vehicle. Based on these findings, the district court ruled that Officer Jensen's search was made solely for investigatory purposes and thus could not be justified as an inventory search. Officer Jensen was also less than candid in his affidavit in failing to inform the magistrate that the food supplement tablets he viewed from the exterior of the vehicle were in a labelled, factory-sealed container. Further, Officer Jensen failed to describe in any detail the aspirin pills he discovered in a container on the console of the vehicle. The district court's finding of intentional misrepresentation by Officer Jensen in his affidavit and Officer Jensen's lack of candor in describing the pills spotted in the vehicle preclude this court from analyzing the actions of Officer Jensen under *Leon's* good faith exception.