[No. C007356.. Third Dist. Nov. 20, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
BRUCE HUNT, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1] All portions of this opinion should be published except part III: "Substantial Evidence Question."

COUNSEL

B. Kay Shafer, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald E. Niver, Gloria F. DeHart and Stan Cross, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SIMS, J.—In this case we decide, among other things, that a passenger in a car is properly citable for not wearing a seat belt, a violation of Vehicle

Code section 27315 (hereafter section 27315), when a police officer lawfully stops the car for a traffic violation and sees the passenger is not wearing a seat belt. We also decide that where a police officer arrests the occupant of a car, places him in the backseat of a patrol car, and immediately conducts a search of the passenger compartment of the occupant's car, the search is lawful under *New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860]).

Defendant Bruce Hunt appeals following his conviction by jury of various felony offenses related to defendant's manufacture and sale of rock cocaine.

In an unpublished portion of the opinion, we reject defendant's contention his convictions are not supported by substantial evidence. Here, we consider and reject defendant's argument the trial court erroneously denied his motion to suppress evidence. (Pen. Code, § 1538.5.)

I

*Evidence Adduced Upon the Motion to Suppress*

At the motion to suppress, the trial court heard the following testimony of arresting officer Keith Jensen: At about 11:25 p.m. on April 1, 1989, patrol officer Jensen and his partner Officer Joyce, in a marked patrol car, stopped a 1988 Toyota Camry four-door sedan after observing it make an illegal left turn without signaling. Officer Jensen intended to cite the driver and approached the Toyota, which was occupied by four men. As he reached the left rear of the car, the driver and front passenger both raised their hands over their heads in a "surrendering type motion," which the officer considered unusual. He noticed that the backseat passengers were not wearing seat belts; they were sitting against the retractable shoulder-seat combination belts, and he had not seen any movement to indicate the belts were removed after the car was stopped. He therefore intended to cite the backseat passengers for not wearing seat belts in violation of section 27315.

At the officer's request, the driver produced a license identifying him as David Lee. Front seat passenger Dwight Greathouse presented his own driver's license and a rental agreement for the vehicle. Backseat passenger Carl White showed his Social Security card. Defendant, seated in the right rear seat, provided no identification other than verbally identifying himself as Paul Hunt. The officer asked for defendant's ID in order to cite him for the seat belt violation.

The officer returned to the police car and conducted record and driver's license checks on defendant and the other three men.

The information received from Department of Motor Vehicles (DMV) indicated a physical description for Paul Hunt markedly different from the officer's observations of defendant. Whereas DMV records indicated Paul Hunt was five feet seven inches, defendant was obviously taller than that. The officer asked defendant to step out of the car and confirmed his initial impression; defendant was about six feet two inches. Defendant was arrested for giving false information to a police officer (Pen. Code, § 148.9) and was placed in the police car.

The officer then had the other occupants get out of the car in order to search it for any identification of defendant. As White began to get out of the car, the officer saw him stuff a white paper napkin in the space between the backseat and the seat bottom. The officer touched the napkin and felt hard chunks he believed were rock cocaine. The officer then found a wadded piece of brown paper containing two pieces of rock cocaine next to the driver's seat. In the glove compartment he found live ammunition. In the trunk of the car he found loaded revolvers and large quantities of rock cocaine. All four men were arrested.

The trial court denied the suppression motion.

## II

### The Motion to Suppress Was Properly Denied

A. *Standard of review.*

Our task is to determine whether exclusion of the challenged evidence is compelled by exclusionary rules necessary to enforce the Fourth Amendment to the United States Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Rogers* (1986) 187 Cal.App.3d 1001, 1006 [232 Cal.Rptr. 294].)

"An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.]

"In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] 'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.]

"The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, viz., the reasonableness of the challenged police conduct, is also subject to independent review. [Citations.] The reason is plain: 'it is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." ' [Citation.]" (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].)

B. *Defendant's detention was lawful.*

Defendant concedes the legality of the initial stop of the car for making an illegal turn.

 Defendant contends the officer had no authority to cite him for a seat belt violation under section 27315, so his detention and the subsequent search of the car were unlawful.[2] Defendant implicitly admits a passenger in a vehicle is citable under certain circumstances for violation of subdivision (e) of section 27315, which provides: "No person 16 years of age or over shall be a passenger in a private passenger motor vehicle on a highway unless that person is restrained by a safety belt."[3] However, he argues a passenger is not citable for a seat belt violation unless the passenger has committed some offense other than the seat belt violation. Defendant's argument is premised on subdivision (k) of section 27315, which provides: "Notwithstanding Section 40300 [procedure on arrest] or any other provision of law, a peace officer shall not *stop* or seize a person for a violation of subdivision (d), (e), or (f), nor arrest or issue a notice to appear or notice to correct for a violation of those subdivisions if the officer has no other cause to *stop* or seize the person other than a violation of subdivision (d), (e), or (f)." (Italics added.)

 However, defendant's construction of the statute is at odds with its plain meaning. Subdivision (k) prohibits a seatbelt citation only where "the officer has no other cause to *stop* . . . the person . . . ." The statute does not say "cause to *arrest*" or "*cite*" the person. "If a statute's language is clear, then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs. [Citation.]" (*Kizer* v. *Hanna* (1989) 48 Cal.3d 1, 8 [255 Cal.Rptr. 412, 767 P.2d 679].)

---

[2] Defendant contends he has standing to challenge the legality of the search. Since the People do not disagree, we will assume for purposes of argument that defendant has standing.

[3] Violation of subdivision (d) is an infraction. (§ 27315, subd. (h).)

■ We are aware, of course, of the rule that a defendant is entitled to the benefit of every realistic doubt in the construction of language used in a penal statute. (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1145 [240 Cal.Rptr. 585, 742 P.2d 1306].) However, that rule of construction is premised on first locating ambiguity in the statute. (See *People* v. *Jones* (1988) 46 Cal.3d 585, 599 [250 Cal.Rptr. 635, 758 P.2d 1165].) Here, we perceive no ambiguity.

Moreover, even assuming subdivision (k) of section 27315 is ambiguous, "The rule of statutory interpretation that ambiguous penal statutes are construed in favor of defendants is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable." (*Jones, supra,* 46 Cal.3d at p. 599.) Here, defendant's proffered interpretation is unreasonable. The Legislature's intent in enacting section 27315, as expressed in subdivision (a) of the statute, is to "contribute to reducing highway deaths and injuries by encouraging greater usage of existing manual seatbelts, . . ." ■ In light of this serious purpose, we cannot believe the Legislature intended that police officers who lawfully stop vehicles for other traffic violations must shield their eyes to seat belt violations committed by passengers. Rather, the evident intent of subdivision (k) of section 27315 is to prevent citizens' freedom of travel from being interrupted solely as a consequence of a seat belt violation. Thus, where police officers lawfully stop a vehicle, they may cite a passenger for a seat belt violation even though the passenger has committed no other offense.

■,■ ■■■ Because the vehicle in which defendant was riding was lawfully stopped defendant was lawfully stopped. (See, e.g., *People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1460 [266 Cal.Rptr. 587] [questioning of passenger does not necessarily constitute a separate detention requiring justification beyond that warranting the traffic stop]; *People* v. *Maxwell* (1988) 206 Cal.App.3d 1004 [254 Cal.Rptr. 124] [passengers may be asked to leave vehicle in connection with investigation of driver's identity].)

It follows that defendant was lawfully detained while the officer ascertained his identity to cite him for the seat belt violation.[4]

---

[4] We therefore need not address defendant's argument that the detention was unreasonable in duration (*People* v. *McGaughran* (1979) 25 Cal.3d 577 [159 Cal.Rptr. 191, 601 P.2d 207]) because only the driver's identification could be checked.

At oral argument, defendant contended the scope of the check was unreasonable, because the officer checked for outstanding warrants as well as DMV records. *People* v. *McGaughran, supra,* held "a police officer who (1) has stopped a motorist for a traffic violation for which the latter cannot be taken into custody and (2) has already detained the offender for the period necessary to perform his functions arising from the violation, [cannot] thereafter lawfully detain him for an additional period of time solely for the purpose of conducting a warrant

C. *The arrest for violation of Penal Code section 148.9 was lawful.*

Defendant contends the search of the car for evidence of his identity could not be justified as incident to his arrest for giving false information to a police officer in violation of Penal Code section 148.9 (hereafter section 148.9), because there was no probable cause to arrest him.[5]

Probable cause to arrest exists when the facts known to the officer " 'would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.' " (*People* v. *Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632].) Here, information received from DMV indicated to the officer defendant was seven inches taller than the person he purported to be. We have no occasion to determine what height differential would constitute probable cause to believe in false identification in all cases. It is sufficient to conclude here that seven inches is enough. That discrepancy in height gave the officer probable cause to arrest defendant for violation of section 148.9.

Defendant contends section 148.9 cannot furnish probable cause because he was not lawfully detained when he gave the false identity. This contention falls with our conclusion that defendant was lawfully detained for the seatbelt violation at the time he falsely identified himself.

Defendant also contends there was no evidence of the requisite intent to evade proper identification under section 148.9. However, giving a false name under the circumstances supports the inference that defendant's intent was to evade identification.

D. *The search of the passenger compartment of the car was lawful under New York* v. *Belton, supra, 453 U.S. 454 [69 L.Ed.2d 768].*

Because the officer had probable cause for the arrest, the contemporaneous search of the passenger compartment was lawful under *New York*

---

check." (25 Cal.3d at p. 586.) However, the Supreme Court also stated: "If a warrant check can be completed within that same period [necessary to discharge duties incurred by virtue of the traffic stop], no reason appears to hold it improper: because it would not add to the delay already lawfully experienced by the offender as a result of his violation, it would not represent any further intrusion on his rights." (*Id*. at p. 584, fn. omitted.)

Defendant does not contend the DMV check was improper. The information revealing the height discrepancy came from the DMV. The officer apparently ran the warrant check and DMV check at the same time. Therefore, the warrant check did not add to the duration of the detention and was permissible under *McGaughran*.

[5] Section 148.9 provides in relevant part: "(a) Any person who falsely represents or identifies himself or herself as another person or as a fictitious person to any peace officer listed in Section 830.1 or 830.2, upon a lawful detention or arrest of the person, either to evade the process of the court, or to evade the proper identification of the person by the investigating officer is guilty of a misdemeanor."

v. *Belton, supra*, 453 U.S. 454. *Belton* held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile . . . [and] [¶] any containers found within the passenger compartment. . . ." (*Id.* at p. 460, fn. omitted [69 L.Ed.2d at p. 775].) Such a search is valid because of the need both to remove any weapons and to prevent the concealment or destruction of evidence. (*Id.* at p. 457 [69 L.Ed.2d at p. 773].)

Defendant argues *Belton* does not apply because the arrest was not custodial. He cites *U.S.* v. *Parr* (9th Cir. 1988) 843 F.2d 1228, which noted that detention in a patrol car during a traffic stop does not necessarily constitute a custodial arrest so as to support a *Belton* search. Here, however, the officer testified he placed defendant under arrest before putting him in the patrol car. No evidence supports defendant's speculation that the officer would not have bothered completing the booking process had no contraband been found.

We also reject defendant's various contentions that the search for identification was unnecessary. Defendant cites no authority requiring an officer conducting a search incident to arrest to exhaust all other alternatives, such as questioning the other occupants concerning defendant's identity or determining whether defendant had an ID on his person. We also reject defendant's claim that after being put in the patrol car he gave (and the officers verified) his true identity; there was no evidence to that effect at the suppression hearing.

■ Defendant also claims his confinement in the locked patrol car obviated the need for a search incident to arrest, citing *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] and *U.S.* v. *Vasey* (9th Cir. 1987) 834 F.2d 782.

*Chimel,* which did not involve the search of a vehicle, held the Fourth Amendment is not violated by the search of a limited area from which an arrestee might gain possession of a weapon or destructible evidence. (*Chimel, supra,* 395 U.S. 752.) While affirming *Chimel's* fundamental principle limiting the area of the search, *Belton* recognized that where an officer arrests the occupant of a motor vehicle, " '[a] single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' " (*Belton, supra,* 453 U.S. at p. 459 [69 L.Ed.2d at p. 774], quoting *Dunaway* v. *New York* (1979) 442 U.S. 200, 213 [60 L.Ed.2d 824, 836, 99 S.Ct. 2248].)

The federal Circuit Courts of Appeals have uniformly construed *Belton*'s "bright line" rule to authorize *contemporaneous* searches of vehicles where the occupant(s) of the vehicles were immobilized and separated from the searched vehicles, usually by being put in the back of a patrol car. (See *U.S. v. White* (6th Cir. 1989) 871 F.2d 41, 43-44 [defendant placed in back of patrol car]; *U.S. v. Karlin* (7th Cir. 1988) 852 F.2d 968, 970-971, cert. den. 489 U.S. 1021 [103 L.Ed.2d 202, 109 S.Ct. 1142] [same]; *United States v. McCrady* (8th Cir. 1985) 774 F.2d 868, 870-871 [same]; *United States v. Cotton* (10th Cir. 1985) 751 F.2d 1146, 1148 [defendant handcuffed].) Appellate courts in many other states have reached the same conclusion. (See, e.g., *State v. Miskolczi* (1983) 123 N.H. 626 [465 A.2d 919] [defendant handcuffed and in a police car at time of search]; *State v. Cooper* (1982) 304 N.C. 701 [286 S.E.2d 102] [defendant in patrol car]; *State v. Winston* (W.Va. 1982) 295 S.E.2d 46 [defendant handcuffed at distance from vehicle]; *Traylor v. State* (Del.Supr. 1983) 458 A.2d 1170 [defendant in handcuffs]; *State v. Valdes* (Fla.App. 1982) 423 So.2d 944 [defendant in patrol car]; *State v. Hopkins* (1982) 163 Ga. 141 [293 S.E.2d 529] [same]; *State v. Reed* (Tenn.Crim.App. 1982) 634 S.W.2d 665 [same]; *People v. Loftus* (1983) 111 Ill.App.3d 978 [444 N.E.2d 834] [defendant handcuffed in parked car].)

We agree with these views. We believe that, in fashioning its "bright line" rule for searches of vehicles incident to custodial arrests, the United States Supreme Court in *Belton* must have envisioned that the overwhelming majority of defendants subject to custodial arrest are, in fact, placed in restrictive custody. "It seems quite likely that, in instances where occupants of a car are arrested, they will be outside the car and will have been placed under some measure of security before the car is searched." (*U.S. v. Karlin, supra*, 852 F.2d at p. 971.)

*U.S. v. Vasey, supra*, 834 F.2d 782, on which defendant relies, held a warrantless car search was not properly limited to the area within the defendant's immediate control and was not a valid search incident to arrest, where it was conducted between 30 and 45 minutes after the defendant had been arrested, handcuffed and placed in a police car, thus lacking the "contemporaneity" requirement of a search *incident* to arrest. Assuming *Vasey* is correctly decided it is distinguishable. Thus, *Vasey* noted: "This court is mindful of the fact that officers should not be forced to make difficult legal decisions during the often-volatile circumstances of an arrest. If the *Chimel/Belton* doctrine is read too strictly, officers will be wary of conducting searches incident to an arrest at the risk of endangering themselves and others. It was upon this consideration that several courts have held that a search of an automobile may be conducted as a search incident to arrest even when the arrestee has been taken from a vehicle and handcuffed.

[Citations.] These cases are distinguishable, however, because the searches in these cases followed closely on the heels of the arrest." (*U.S.* v. *Vasey, supra,* 834 F.2d at p. 787.)

Here, unlike *Vasey,* the search was conducted immediately after defendant was placed in the patrol car. The search of the passenger compartment of the car (including the napkin and brown paper "containers") was proper under *Belton.* (453 U.S. at pp. 460-461 [69 L.Ed.2d at p. 775].)[6]

E. *The search of the trunk was lawful.*

■ Once the officer discovered rock cocaine in the passenger compartment, he had probable cause to believe illegal drugs would be found in the trunk of the car. The officer could lawfully search the trunk without a warrant because he was entitled to conduct a search of the car that was as thorough as a magistrate could authorize in a warrant. (*United States* v. *Ross* (1982) 456 U.S. 798, 800 [72 L.Ed.2d 572, 578, 102 S.Ct. 2157].) Here, given the contraband found in the passenger compartment, a magistrate would have properly issued a warrant to search the trunk and any containers therein.

We thus find no violation of defendant's Fourth Amendment rights and conclude the trial court properly denied his motion to suppress.

III*

*Substantial Evidence Question*

. . . . . . . . . . . . . . . . . . . .

---

[6] Defendant appears to make an additional argument that the search for destructible evidence was pretextual because the officer admitted he did not expect to find any identification in the first item searched—the napkin White had stuffed down into the car seat upon being asked to leave the car. We reject this argument as a mischaracterization of the evidence. A fair (and more logical) reading of the officer's testimony is that once he *felt* the napkin, he did not think it contained an ID. What he felt were hard chunks that he thought might be cocaine, based on his experience having felt rock cocaine on at least 200 prior occasions. Moreover, White did not stuff the napkin into the seat until the officer asked the occupants to leave the car in order to search it. Thus, the prosecution did not rely on White's movement of the napkin to furnish probable cause for the car search, and there is no evidence the search for identification was pretextual.

*See footnote 1, *ante,* page 498.

## DISPOSITION

The judgment is affirmed.

Carr, Acting P. J., and DeCristoforo, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 27, 1991.