**UNITED STATES of America, Plaintiff,**

v.

**Braulio SANCHEZ, Defendant.**

**Crim. No. 95–15–P–C.**

United States District Court,
D. Maine.

June 20, 1995.

---

Jonathan R. Chapman, Asst. U.S. Atty., Portland, ME, for the Government.

Neal A. Duffett, Cloutier, Barrett, Cloutier & Conley, Portland, ME, for defendant.

### MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Chief Judge.

Defendant Braulio Sanchez has been charged in a Criminal Complaint with knowingly and intentionally possessing with intent to distribute cocaine, a Schedule II controlled substance listed in 21 U.S.C. § 812, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The Court now has before it Defendant's Motion to Suppress the evidence gained as a result of the search of the vehicle he was driving and any statements he made to police authorities after his arrest. Docket No. 11. Based on the evidence presented at the hearing, the Court concludes that Defendant's Motion to Suppress should be denied.

### I. FACTS

The following evidence was presented at the motion hearing. On March 6, 1995, at approximately 9:10 p.m., Trooper Dean Knight of the Maine State Police stopped a silver Mercury Mystique automobile on the Maine Turnpike near Biddeford, Maine, because the car was shown on police radar to be travelling at 89 miles per hour in a 65 miles per hour zone. The driver identified himself to Trooper Knight as Braulio Sanchez and produced a Rhode Island driver's license that had been issued in that name. Sanchez also produced a car rental agreement showing that the vehicle was rented to another man and was due to be returned the previous week.[1] Knight radioed a request to have a license check done on Sanchez. The

1. Sanchez told Trooper Knight that the man who rented the vehicle gave him permission to drive the vehicle.

license check revealed that Sanchez's license was suspended.[2]

Knight radioed Trooper Charles Granger, who was parked in a nearby turnpike crossover, for assistance. When Trooper Granger arrived, Trooper Knight asked Sanchez to get out of the vehicle and placed him under arrest for operating a vehicle with a suspended license. At that time, Trooper Knight handcuffed Sanchez and placed him in the front passenger seat of his police cruiser with the passenger door locked.[3]

After Sanchez was removed from the car, Trooper Granger asked the passenger for identification. The young woman produced a junior driver's license, which does not permit her to operate a motor vehicle at night. Trooper Granger then asked the woman some questions about where she was going. The young woman responded that she was going to Portland to stay for a few days.[4] Trooper Granger then told the young woman to get out of the car and she stood by the rear of the vehicle.[5] Trooper Granger began a search of the car, starting with the center console. Inside the center console, Trooper Granger found a clear plastic bag containing a hard white substance approximately the size of a baseball. Granger stopped the search at this point and radioed for a drug-detection canine.

At some point while Trooper Granger was questioning the young woman and searching the car, Trooper Knight gave Sanchez *Miranda* warnings from memory and Sanchez waived his rights, and then allegedly made incriminating statements. Trooper Knight then transported Sanchez to the State Police Headquarters in South Portland. At the State Police Headquarters, Trooper Knight told Special Agent Kenneth Pike of the Maine Drug Enforcement Agency that he had already given *Miranda* warnings to Sanchez at the roadside. Although he did not specifically go through the rights, Pike confirmed with Sanchez that he had been given his *Miranda* warnings and that he understood his rights. Sanchez again waived his rights and allegedly made incriminating statements.

Special Agent John Bryfonski of the Federal Drug Enforcement Agency received a call at approximately 10:00 p.m. on March 6, 1995, to assist the State Police in their investigation and joined the other officers at the headquarters in South Portland. Bryfonski first met with Trooper Knight, Trooper Granger, and Agent Pike, and then advised Sanchez of his *Miranda* rights by reading them from a card. Govt.Ex. 1. Sanchez told Agent Bryfonski that he understood his rights. Agents Bryfonski and Pike then agreed to interview Sanchez and the young woman passenger separately, with Agent Bryfonski questioning the young woman and Agent Pike continuing to question Sanchez. After he had finished questioning the young woman, Agent Bryfonski entered the room where Agent Pike was questioning Sanchez and he asked Sanchez a few questions. Sanchez made statements that were allegedly incriminating. Sanchez then told Agent Bryfonski that everything he had told him was a lie. At that point, Agent Bryfonski ended the interview. Sanchez was then taken upstairs for processing. During processing, Agent Bryfonski gave Sanchez a written "Statement of Rights and Waiver" form, which Sanchez refused to sign.[6] Defendant's Ex. 1.

2. Maine law provides that it is a Class E crime for a person to drive a vehicle after license suspension and that a person can be arrested for a Class E crime.

3. Trooper Knight testified that he then got out of the car and checked the trunk of the car Sanchez was driving for additional persons. Finding the trunk completely empty, Knight returned to his vehicle to write out the traffic ticket and summons for Sanchez.

4. Trooper Granger noticed that there was nothing in the car but a jacket on the backseat.

Trooper Granger testified that he thought it was strange that the young woman did not have a jacket or an overnight bag with her.

5. Although there is some question about exactly when, at some point a tow truck was called after the troopers learned that the young woman passenger could not legally drive the car.

6. The Court notes the apparent delay in giving the "Statement of Rights and Waiver" form to Sanchez. The form begins "Before we ask you any questions, you must understand your rights." Defendant's Ex. 1.

## II. DISCUSSION

### A. Search and Seizure of Evidence

■ Defendant first contends that the search was illegal because it was conducted outside the parameters of *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Specifically, Defendant contends that because he had been removed from the vehicle, handcuffed inside the police cruiser, and the arrest procedure had been completed, the search of the vehicle was not sufficiently contemporaneous to fall within the "search incident to arrest" exception to the Fourth Amendment's warrant requirement.

*Belton* holds that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460, 101 S.Ct. at 2864 (footnotes omitted). The Court understands Defendant to challenge both the temporal proximity of the search to the arrest and spatial proximity of the arrestee to the vehicle searched. On the temporal inquiry, Defendant relies on *United States v. Vasey*, 834 F.2d 782 (9th Cir.1987), for support. The Court finds the facts of *Vasey* distinguishable from the instant case. In *Vasey* the court found invalid an automobile search which occurred thirty to forty-five minutes after the suspect's arrest. As noted by the *Vasey* court, there is a distinction between a thirty-minute lapse in time and searches "follow[ing] closely on the heels of the arrest." *Id.* at 787. *See also United States v. Doward*, 41 F.3d 789, 793 n. 3 (1st Cir.1994). Here, the testimony revealed that approximately seven to ten minutes passed from the time of Sanchez's arrest until Trooper Granger began the search and found the drugs. During that seven-to-ten minute time period, Trooper Granger was verifying the identification and destination of the passenger. The Court does not find this lapse in time to be exceptional. Trooper Granger initiated the search immediately after he had obtained the necessary information and, in response to his request, the passenger exited the vehicle.

With regard to spatial proximity, what the opinion in *Belton* does not reveal is whether at the time of the search the arrestee must have any physical proximity to the vehicle. Nevertheless, the *Belton* Court founded its bright-line rule on "the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, *even if not inevitably*, within the 'area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].'" *Id.* at 460, 101 S.Ct. at 2864 (emphasis added) (quoting *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)). It is not known from the facts in *Belton* whether the vehicle's occupants, while outside of the vehicle, were secured and, similar to Sanchez, unable to reach into the passenger compartment for any purpose or whether they could have gained access to the passenger compartment of the vehicle. Nevertheless, the *Belton* Court did not limit its bright-line rule by requiring that the warrantless search cease once all occupants were removed from the passenger compartment.[7] *See e.g., United States v. Jackson*, 918 F.2d 236, 240 (1st Cir.1990) (arrestee handcuffed in police vehicle); *United States v. White*, 871 F.2d 41, 43 (6th Cir.1989) (arrestee in police vehicle); *United States v. Karlin*, 852 F.2d 968, 970–71 (7th Cir.1988) (arrestee handcuffed in police vehicle), *cert. denied*, 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989); *United States v. Cotton*, 751 F.2d 1146, 1148 (10th Cir.1985) (arrestee handcuffed); *United States v. Collins*, 668 F.2d 819, 821 (5th Cir.1982) (arrestee handcuffed).

The Court also finds *United States v. Doward*, 41 F.3d 789 (1st Cir.1994), to be helpful on this point. In *Doward*, the police arrested the defendant on an outstanding arrest warrant. After being handcuffed and placed in a nearby police vehicle, the officer

---

7. In its discussion of the arrestee's ability to gain access to the passenger compartment of the vehicle, the *Vasey* court found that defendant's Fourth Amendment rights were violated because, among other things, he was handcuffed in the rear of the police vehicle and *Chimel* "does not allow officers to presume that an arrestee is superhuman." *Vasey*, 834 F.2d at 787. This Court finds this analysis, under the general principle of *Chimel*, to be off the mark. *Belton*'s bright-line rule vitiates the need for any sort of "grabability" analysis altogether.

searched Doward's vehicle, finding a loaded gun. At some point during the search, but before the gun was found, the police van arrived at the scene and Doward was transported to the police station. Doward moved to suppress the handgun, arguing that the search which yielded the gun was not sufficiently contemporaneous with his arrest because the handgun was seized *after* he had been removed from the scene and, therefore, there was no conceivable risk that he could have reached it. Holding the search lawful, the Court of Appeals for the First Circuit found that "[n]othing in [*Belton*] even remotely implies that law enforcement officers must *discontinue* a passenger-compartment search—properly initiated as a contemporaneous *incident* of an occupant's arrest—the instant the arrestee is transported from the scene." *Id.* at 793. It logically follows that if a search conducted after the arrestee has been taken from the scene of the arrest is lawful, a search incident to an arrest conducted while the arrestee is still at the scene is likewise lawful, despite the reality that in neither scenario could the arrestee gain access to the vehicle.

 In sum, the Court finds that where a police officer has made a lawful arrest of a suspect in an automobile, the officer may seize articles found within the interior of the automobile as part of a search incident to the lawful arrest, even where the arrestee is outside of the vehicle and handcuffed.

### B. Statements to Police Officers

 *Miranda* warnings are required before any custodial interrogation may be conducted. *United States v. Taylor*, 985 F.2d 3, 7 (1st Cir.1993); *United States v. Maguire*, 918 F.2d 254, 262 (1st Cir.1990). Defendant contends that all the statements he made to the police officers after his arrest should be suppressed because no one advised him of his full and complete *Miranda* warnings. The Government counters that full *Miranda* warnings were given by Trooper Knight at the roadside and again by Agent Bryfonski at the State Police Headquarters.

Trooper Knight testified that after he arrested Sanchez and placed him in his police vehicle, he gave Sanchez his *Miranda* warnings. Although he did not use a card, Trooper Knight testified that complete *Miranda* warnings were given to Sanchez. When asked to recite to the Court exactly what he told Sanchez, Trooper Knight omitted that part of the warning which provides that "anything you say can be used against you in court." When specifically asked by the Assistant United States Attorney whether he included that portion when he gave the warnings to Sanchez, Trooper Knight responded that it had been part of his warning at the roadside. The Court is satisfied that Trooper Knight administered the complete *Miranda* warning to Sanchez at the roadside following his arrest. The Court further finds that Sanchez explicitly waived his rights.

Shortly after being taken to the State Police Headquarters, Agent Pike confirmed with Sanchez that he had been advised of his *Miranda* rights and that he understood those rights. Agent Pike testified that Sanchez explicitly agreed to talk with him. After a short while, Agent Bryfonski entered the room where Agent Pike was questioning Sanchez and administered full *Miranda* warnings to Sanchez. Sanchez again waived his rights and agreed to speak with Agent Bryfonski. The Court finds that Sanchez was twice given complete *Miranda* warnings and that he waived his rights pursuant to those warnings when questioned by Trooper Knight, Agent Pike, and Agent Bryfonski.

Accordingly, Defendant's Motion to Suppress is **DENIED.**