UNITED STATES of America, Appellee,

v.

**Edward TRZASKA, Defendant–Appellant.**

**No. 192, Docket 95–1676.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 18, 1996.

Decided May 1, 1997.

---

10. There is no contention in this case that the underlying dispute over the amount of the § 2013 credit was not genuine.

Jane Simkin Smith, Millbrook, NY, for Defendant–Appellant.

Andrew J. Frisch, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY (Zachary W. Carter, United States Attorney, Peter A. Norling, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY, of counsel), for Appellee.

Before: MESKILL, WINTER and CABRANES, Circuit Judges.

MESKILL, Circuit Judge.

After a jury trial in the United States District Court for the Eastern District of New York, Korman, J., defendant was convicted of violating 18 U.S.C. § 922(g)(1), which makes it a crime for a convicted felon to possess firearms or ammunition.

During the trial, defendant, through a defense witness, introduced an out-of-court statement made by defendant. The district court ruled that the statement was hearsay, and pursuant to Fed.R.Evid. 806, which states that a hearsay declarant can be impeached as if the declarant were a witness, the court allowed the government to impeach defendant with an inconsistent statement of defendant that the government had illegally acquired. We conclude that defendant's illegally acquired statement could not be used to impeach defendant because the statement was insufficiently inconsistent with the statement offered by defendant. Because the error was not harmless, we reverse and remand for a new trial.

Defendant also claims (1) that two search warrants used were not supported by probable cause as the warrants contained illegally seized evidence and false statements, (2) that 18 U.S.C. § 922(g)(1) is beyond Congress' power under the Commerce Clause, and (3) that defendant received ineffective assistance of counsel. We reject each of these three arguments.

Reversed and remanded.

## BACKGROUND

### I. *Introduction*

In September 1983, Edward Trzaska was convicted in the United States District Court for the Southern District of New York for unlawfully receiving firearms and was sentenced to prison for two years to be followed by five years probation. Upon release from prison, Trzaska violated the terms of his probation by possessing nineteen firearms and was sentenced to twenty years imprisonment. *United States v. Trzaska,* 859 F.2d 1118 (2d Cir.1988). After serving five years of this sentence, Trzaska was again released on parole.

United States Probation Officer Kelley O'Keefe supervised Trzaska while he was on parole. In May 1993, the probation officer learned from Trzaska's neighbor, Diane Johnson, that Trzaska was receiving a large number of magazines and mail-order catalogs relating to firearms as well as United Parcel Service (UPS) shipments from the Natchez Shooters Supply Company. The probation officer contacted the Natchez Shooters Supply Company and received invoices indicating that firearm and ammunition accessories addressed to "Ed's Sporting Goods" had been shipped to Trzaska's apartment.

The probation officer also began an investigation of UPS shipping records, and with the UPS's help, discovered that seventeen other weapon supply companies had made shipments to Trzaska's apartment. She contacted some of the weapon supply companies, and invoices provided by those companies indicated that the companies also had sent firearm and ammunition accessories to Trzaska's apartment.

In September 1993, while Trzaska was still on parole, probation officer O'Keefe and United States Probation Officer Eileen Kelly made a routine home visit to Trzaska's apartment in Queens. *See United States v. Rea,* 678 F.2d 382, 387 (2d Cir.1982) (a probation officer needs a warrant to search a probationer's home, but can conduct warrantless "visit[s]" to check up on the probationer). While the officers were aware of the deliveries to Trzaska's apartment, they did not ex-

pect to see firearms or ammunition within the apartment. When the officers were admitted into the apartment, they observed a variety of ammunition in plain view. The officers, fearing for their safety, promptly left the apartment.

About an hour later, the officers returned to Trzaska's apartment accompanied by four New York City police officers. Probation officers O'Keefe and Kelly then proceeded to conduct what they termed a "plain view" search and seizure, in which they seized all the guns and ammunition they had seen. O'Keefe requested, but was refused, permission to search areas not in plain view. As the officers left the apartment, Trzaska said to officer O'Keefe "I'm a drug addict with this. Its a sickness."

Upon returning to the Probation Department's office, probation officer O'Keefe telephoned Johnson, Trzaska's next-door neighbor, and asked if Johnson could see whether Trzaska was taking anything out of the apartment. Johnson reported that Trzaska was loading several bags into his car. Officer O'Keefe asked Johnson to wait for Trzaska to leave and to see if Trzaska was putting the items into Trzaska's nearby garage. Several minutes later, Johnson called back and allegedly informed officer O'Keefe that Trzaska was indeed putting the items into the garage. Officer O'Keefe proceeded to Trzaska's garage and saw Trzaska drive by the garage at least six times within the next hour.

## II. The Search Warrant and Trzaska's Arrest

Three days later, officer O'Keefe related what had occurred to an agent of the Bureau of Alcohol, Tobacco & Firearms (ATF), and the ATF agent applied for warrants to search Trzaska's apartment and garage. Based on the ATF agent's affidavit, which recounted the facts outlined above, a magistrate judge issued the warrants. The warrants were executed the next day, and among the items seized were approximately forty operable firearms and approximately 8,000 rounds of ammunition. Trzaska was arrested and indicted for violating 18 U.S.C. § 922(g)(1), which makes it a crime for a convicted felon to possess firearms or ammunition.

## III. Trzaska's Pretrial Motions to Suppress Evidence

Before trial, Trzaska made a motion to suppress the evidence seized during the warrantless "plain view" search of his apartment. The district court held that the "plain view" search was unconstitutional because it was conducted without a warrant, and therefore granted Trzaska's motion to suppress the evidence seized in that search, which was interpreted to include his statement about addiction to guns. *United States v. Trzaska,* 866 F.Supp. 98, 101–05 (E.D.N.Y.1994). This ruling was not appealed and is not questioned on this appeal. Thus we proceed on the assumption that the "plain view" search and seizure was illegal.

Trzaska also moved to suppress the evidence seized during the execution of the search warrants, arguing that the evidence seized pursuant to the warrants was "fruit" of the illegal "plain view" search. The district court held that there was probable cause to issue the search warrants even absent the illegal "plain view" search, and denied this motion to suppress. *Id.* at 105–06.

## IV. Trzaska's Trial

At trial, the government offered the evidence outlined above except for the evidence gathered during the illegal "plain view" search and seizure.

After the government presented its case, Trzaska presented his defense, which consisted principally of evidence indicating that his son Kevin owned and possessed the guns. Kevin testified, in pertinent part, as follows:

Q. [D]o you know a man by the name of Hank, a friend of your father's?

A. Yes, I do.

Q. And, were you present on any occasions when Hank asked your father to take [your father's guns] from him?

A. Yes, I was.

. . . .

Q. Did there come a time when your father asked you to pick up [the guns] from Hank?

A. Yes....

....

Q. Do you know why your father asked you to pick them up?

A. *He didn't want nothing to do with them anymore.*

(emphasis added). The government did not object to this testimony.

The government then began its rebuttal. The government argued that Trzaska's statement to his son that Trzaska "didn't want nothing to do with [the guns] anymore" was hearsay, and sought to impeach Trzaska by showing that the statement was inconsistent with Trzaska's subsequent statement to O'Keefe that he was "addict[ed]" to guns. Fed.R.Evid. 806 allows a hearsay declarant to be impeached as if the declarant had testified in court as a witness.

Trzaska's statement to O'Keefe ordinarily would be inadmissible because it was made during the illegal search and seizure at Trzaska's apartment. *See Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914); *Wong Sun v. United States,* 371 U.S. 471, 485–86, 83 S.Ct. 407, 416–17, 9 L.Ed.2d 441 (1963). However, in *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), the Supreme Court held that illegally seized evidence can be used to impeach a criminal defendant if that defendant testifies in his or her own defense. *Id.* at 65–66, 74 S.Ct. at 356–57. The government argued that because Fed. R.Evid. 806 allows a hearsay declarant to be impeached as if the declarant were a witness, the government should be allowed to impeach Trzaska as if he were a witness, and therefore, the government should be allowed to use Trzaska's inconsistent statement to impeach him. Trzaska argued that his statement to his son was not hearsay so that he could not be impeached under Fed.R.Evid. 806, and that in the alternative, *Walder* was not applicable here. *See James v. Illinois,* 493 U.S. 307, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990).

The district court concluded that Trzaska's statement to his son was hearsay, that the government could therefore impeach Trzaska under Fed.R.Evid. 806, and that *Walder* allowed the government to use the illegally acquired statement to impeach Trzaska. *See United States v. Trzaska,* 885 F.Supp. 46, 48–50 (E.D.N.Y.1995) (discussing whether the illegally acquired evidence was admissible to impeach Trzaska under *Walder*). Further, in order to put Trzaska's statement that he was addicted to guns in context, the district court permitted probation officer O'Keefe to testify that she removed a "rifle, various ammunition, spent shells and live shells, and calibrators, reloading equipment, and various other things" from Trzaska's apartment during the illegal "plain view" search. The district court instructed the jury to use Trzaska's statement to O'Keefe only to impeach Trzaska's statement to his son.

The jury convicted Trzaska of being a felon in possession of firearms and ammunition.

## V. *Post–Trial* Franks *Hearing*

After the verdict, Trzaska, on a motion for a new trial, argued that the evidence obtained with the search warrants should have been suppressed because the warrant affidavit contained false statements about Johnson's observations of Trzaska's movements that were made in a deliberate or reckless disregard for the truth. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Specifically, Trzaska contended: that the warrant falsely stated that Johnson saw Trzaska loading his car one hour after the illegal "plain view" search, while Johnson testified that it was in fact closer to four hours; that the warrant falsely stated that Johnson saw Trzaska loading "two large garbage bags, one box and several shopping bags" into his car, while Johnson testified that she in fact saw Trzaska loading "packages ... [and] plastic garbage bags" into his car; and that the warrant falsely stated that Johnson saw Trzaska unload the items into his garage, while Johnson testified that she saw Trzaska's car with its trunk open in or

near the driveway of the garage, but denied that she saw Trzaska unloading his car.

The district court conducted a post-trial *Franks* hearing on Trzaska's claim. At that hearing, probation officer O'Keefe testified that she did not make notes about her conversations with Johnson until well after the conversations occurred. Further, O'Keefe also testified that the reason she had the ATF agent prepare the warrant affidavit was that O'Keefe had never applied for a search warrant before and did not believe she could sign a warrant affidavit. Finally, O'Keefe testified that she believed the affidavit was accurate at the time it was prepared and that she continued to believe the affidavit was accurate.

The court noted that O'Keefe was not trained as a law enforcement officer and was therefore "careless[ ]" in how she took notes. Further, the district court stated: "It was simply not good practice and good procedure to have someone swear to an affidavit who had absolutely no personal knowledge of the facts." The court concluded that any false statements that were contained in the affidavit were a result of these mistakes and other misunderstandings, and that these mistakes and misunderstandings did not arise to a deliberate or reckless disregard for the truth. Accordingly, the court held that the statements were properly included in the warrant affidavits.

## DISCUSSION

### I. *Inconsistent Statements*

■ Trzaska contends that his statement to probation officer O'Keefe could not be used to impeach him because the statement was insufficiently inconsistent with his statement to his son. We agree.

Trzaska was impeached under Fed.R.Evid. 806, which states, in pertinent part: "When a hearsay statement ... has been admitted in evidence, the credibility of the declarant may

be attacked ... by any evidence which would be admissible for those purposes if declarant had testified as a witness." Fed.R.Evid. 806. The rationale for the rule has been explained as follows: "The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment ... as though he had in fact testified." Fed.R.Evid. 806 advisory committee's notes. A hearsay declarant may therefore be impeached by showing that the declarant made inconsistent statements. *See* Fed.R.Evid. 806; Fed. R.Evid. 613.[1]

The district court concluded that Trzaska's statement to the probation officer that he was like "a drug addict with this" was inconsistent with his statement to his son that "[h]e didn't want nothing to do with [the guns] anymore," and the court therefore allowed the government to use Trzaska's statement to the probation officer to impeach him. Trzaska argues that the district court erred when it concluded that the two statements were inconsistent.

The Supreme Court has stated: "the question whether evidence is sufficiently inconsistent to be sent to the jury on the issue of credibility is ordinarily in the discretion of the trial court. But where such evidentiary matter has grave constitutional overtones ... we feel justified in exercising [our] supervisory control." *United States v. Hale*, 422 U.S. 171, 180 n. 7, 95 S.Ct. 2133, 2138, 45 L.Ed.2d 99 (1975) (quotation marks omitted). Because the district court allowed the government to impeach Trzaska with evidence the government acquired in violation of the Fourth Amendment, we too are justified in exercising our supervisory control over the district court.

It is well settled that for two statements to be inconsistent, they "need not be diametrically opposed." *United States v. Agajanian*, 852 F.2d 56, 58 (2d Cir.1988); *see also*

---

1. Under Fed.R.Evid. 806, a hearsay declarant may be impeached by an inconsistent statement that was made *prior* to or *subsequent* to the hearsay declaration. *See United States v. Graham*, 858 F.2d 986, 990 (5th Cir.1988) ("Under rule 806 ... any prior or subsequent inconsistent statements by ... the declarant, would be admis-

sible to impeach [the declarant's] credibility.") (emphasis omitted); Fed.R.Evid. 806 advisory committee's notes. Therefore, the timing of Trzaska's statement to O'Keefe does not by itself prevent the statement from being used to impeach Trzaska.

Charles A. Wright & Victor J. Gold, 28 *Federal Practice and Procedure* § 6203, at 514 (1993). Nevertheless, the statements must be inconsistent. *Hale,* 422 U.S. at 176, 95 S.Ct. at 2136; *see also* Wright & Gold, *supra,* § 6203, at 514 (stating that statements are inconsistent if there is "[a]ny variance between the statement and the testimony that has a *reasonable bearing on credibility*" (emphasis added)); John W. Strong *et al.,* 1 *McCormick on Evidence* § 34, at 115 (4th ed. 1992) ("[T]he test should be, could the jury reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make a . . . statement of this tenor?").

It is unclear exactly what each of Trzaska's two statements meant, and it is therefore difficult to determine whether the two statements are inconsistent. However, we consider the two apparent possibilities below, and conclude that in each case the statements are not inconsistent.

First, the district court held that Trzaska's 1992 statement to his son should be understood as "regarding [Trzaska's] intent to relinquish ownership of the firearms found during the legal search of [his] garage." *Trzaska,* 885 F.Supp. at 47. In contrast, Trzaska's September 1993 statement to the probation officer that he was like "a drug addict with this" is probably best understood as an admission by Trzaska that he had a general obsession with guns. *See id.* The district court concluded that the two statements, interpreted in this way, were sufficiently inconsistent to allow Trzaska to be impeached. *Id.* We disagree.

Initially, we note that there is no necessary inconsistency between Trzaska indicating his desire to give specific guns to his son, and later admitting that he (Trzaska) was obsessed with guns in general. Alcoholics may give away alcohol and cigarette smokers may give away cigarettes. Further, while both statements concern Trzaska's state of mind, it is significant that the two statements were made approximately a year apart. Considering the changing nature of a person's subjective intent, this time lapse clouds whatever inconsistency that might have existed between the two statements. We conclude

therefore that the statements, as interpreted by the district court, were insufficiently inconsistent to allow Trzaska to be impeached.

Second, the government contends that Trzaska's statement to the probation officer should be interpreted as Trzaska admitting that he possessed the guns in his apartment, while Trzaska's statement to his son should be interpreted as Trzaska denying that he possessed the guns his friend was storing. However, even assuming that we interpreted the two statements as the government suggests, the statements are not inconsistent because they refer to different guns. (The guns that were the subject of Trzaska's statement to his son were not stored in Trzaska's apartment and were not found until several days after Trzaska made his statement to the probation officer.) There is nothing inconsistent with disclaiming an interest in certain guns while admitting possession of other guns.

Based on the foregoing, we conclude that Trzaska's two statements were not inconsistent, and that the district court erred when it admitted Trzaska's statement to O'Keefe.

■ Having concluded that the district court erred in admitting the statement, we conclude that the error was not harmless. Not only did the jury hear that Trzaska was "addict[ed]" to guns, but to provide context for this statement, the district court also allowed the probation officer to testify that the government removed "a rifle, various ammunition, spent shells and live shells, and calibrators, reloading equipment, and various other things" from Trzaska's apartment—all evidence that should have remained excluded as the product of the illegal "plain view" search. Admitting this hard evidence made the district court's error more than harmless error. Accordingly, Trzaska's conviction must be vacated and the case remanded for a new trial.

We note that there are two issues which were raised on appeal which we do not decide. First, a constitutional issue. The Supreme Court has held that illegally acquired evidence may be used to impeach defendants who testify in their own defense. *Walder v. United States,* 347 U.S. 62, 64–66, 74 S.Ct.

354, 355–56, 98 L.Ed. 503 (1954). However, the Supreme Court has also held that a defense witness (other than the defendant) may not be impeached by illegally acquired evidence. *James*, 493 U.S. at 313–19, 110 S.Ct. at 652–55. This case raises the issue—can illegally acquired evidence be used to impeach a defendant when a hearsay statement of the defendant comes in through a defense witness? *See* Fed.R.Evid. 806 (hearsay declarants may be impeached "by any evidence which would be admissible for those purposes if declarant had testified as a witness"). As mentioned above, we need not decide this issue.

The second issue that we leave undecided is an evidentiary issue. Trzaska argues that he did not offer his statement to his son to prove the truth of the matter asserted, that therefore the statement was not hearsay, and that therefore the government could not impeach him. *See* Fed.R.Evid. 806. Unlike most situations in which a court decides whether a statement is hearsay, here, the government did not object to Trzaska's statement, and it was only later, when the government asserted that the statement was hearsay and sought to impeach Trzaska, that a question arose as to the purpose for which the statement was offered. This raises the issue—how should a court · determine the purpose for which a statement was offered in this situation? The rule could be that the statement was offered for all purposes to which it was relevant—if this were the rule, Trzaska could be impeached because the statement was clearly relevant to proving the truth of the matter asserted. On the other hand, the rule could be that the statement was offered only for the purpose which the proponent intended at the time it was offered—if this were the rule, Trzaska could not be impeached, as our review of the record indicates that Trzaska probably intended that his statement not come in for the truth of the matter asserted, but rather as a verbal act to show that he disclaimed an interest in the guns and thereby gave them to his son. Again, we leave this issue undecided.

For the reasons discussed above, Trzaska's conviction is vacated and the case is remanded for a new trial.

## II. *The Search Warrants*

### A. *The Illegal Search and Probable Cause*

Trzaska argues that the warrants issued to search his apartment and garage were not supported by probable cause, as the warrant affidavit contained evidence obtained in the illegal "plain view" search and seizure.

Evidence seized during an illegal search should not be included in a warrant affidavit. *See Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963); *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir.1987). However, " '[t]he mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant.' " *United States v. Reilly*, 76 F.3d 1271, 1282 n. 2 (2d Cir.1996) (quoting *Vasey*, 834 F.2d at 788). " '[A] reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant.' " *Id.* (quoting *Vasey*, 834 F.2d at 788).

■ We have no problem concluding that the warrant affidavit, excised of the tainted evidence, provided probable cause to issue a warrant to search Trzaska's apartment. The warrant affidavit accurately recounted that Trzaska had received shipments from eighteen weapon supply companies, and that several of the companies confirmed sending firearm and ammunition accessories to Trzaska's apartment. Further, while probation officers O'Keefe and Kelly were legally conducting a home visit at Trzaska's apartment, they observed ammunition openly visible within the apartment. Based on this evidence, the warrant affidavit, excised of the illegally seized evidence, provided probable cause to search Trzaska's apartment.

■ Whether there was probable cause to issue a warrant to search Trzaska's garage is a more difficult question. The warrant to search Trzaska's garage was issued because, shortly after the illegal "plain view" search, Trzaska allegedly was seen loading bags from his apartment into his car, driving his car to his nearby garage and unloading the

bags into the garage. Trzaska contends that the illegal "plain view" search caused him to remove the guns from his apartment, and that therefore his movements were the "fruit of the poisonous tree" and should also have been excluded from the warrant affidavit. Evidence obtained as a result of the defendant's "intervening independent act of free will" serves to "purge the primary taint of the unlawful invasion." *Wong Sun,* 371 U.S. at 486, 83 S.Ct. at 416. The government contends that Trzaska's movements were properly included in the warrant affidavit because they were a product of Trzaska's free will.

To determine whether a defendant's actions are a product of free will, a court should consider how close in time the illegal search occurred to the defendant's actions, the presence of intervening circumstances and the purpose and flagrancy of the official misconduct. *See Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975); *United States v. Oguns* 921 F.2d 442, 447 (2d Cir.1990); *see also Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417 (to determine whether evidence is a fruit of a poisonous tree, a court must determine whether the government acquired the evidence by exploiting the illegal search or rather by a means sufficiently distinguishable from that search). The burden of showing admissibility rests on the prosecution. *Brown,* 422 U.S. at 604, 95 S.Ct. at 2262.

Here, Trzaska moved the guns between one and four hours after the government's illegal entry. That interval provided Trzaska sufficient time to decide whether he should move the guns. Further, the officers left Trzaska alone in his apartment during this time. This constituted an intervening circumstance that allowed Trzaska to decide independently whether or not to move the guns. *Cf. Oguns,* 921 F.2d at 447–48 (advising defendant of his rights so that he could independently make decision constitutes intervening circumstance). Finally, the probation officers were aware that their initial home visit was proper, and believed that their return to conduct a "plain view" search was also proper. While the search was illegal, the probation officers did not act with a

bad purpose or engage in flagrant misconduct. *See id.* (initially, the government was legally present on defendant's property, but it illegally returned to question defendant, and the court said "[t]he appropriateness of the first [legal] entry ... had the effect of mitigating the egregiousness of the second illegal entry"). Based on the foregoing, we conclude that Trzaska moved the guns from his apartment to his garage of his own free will and the evidence was not a fruit of the illegal government search. *Cf. Segura v. United States,* 468 U.S. 796, 816, 104 S.Ct. 3380, 3391, 82 L.Ed.2d 599 (1984) (holding that evidence was not a fruit of an illegal government entry even though the illegal entry prevented defendant from removing the evidence, and stating "[t]he essence of the [argument] is that there is some 'constitutional right' to destroy evidence. This concept defies both logic and common sense").

Therefore, that evidence was properly included in the warrant affidavit, and the affidavit, excised of the illegally seized evidence, provided probable cause to search Trzaska's garage. Having reached this conclusion we need not address the government's argument that it should have the benefit of the "good faith exception" to the exclusionary rule. *See United States v. Leon,* 468 U.S. 897, 922–23, 104 S.Ct. 3405, 3420–21, 82 L.Ed.2d 677 (1984).

B. *False Statements in the Warrant Affidavit and Probable* Cause

■ Trzaska also argues that the warrants were not supported by probable cause because the warrant affidavit falsely related Johnson's observations of Trzaska's movements while Trzaska was moving the guns from his apartment to his garage after the illegal "plain view" search.

Every statement in a warrant affidavit does not have to be true. *Franks v. Delaware,* 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978). However, if a defendant can make a sufficient showing that false statements were deliberately or recklessly included in a warrant affidavit, a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to

issue the warrant. *Id.* at 171–72, 98 S.Ct. at 2684–85. If the remaining portions of the affidavit would support probable cause, the warrant was properly issued and the court need go no further. *Id.* However, if the remaining portions of the affidavit would not create probable cause, the court should conduct a hearing to determine whether the statements were in fact false and whether they were made in a deliberate or reckless disregard for the truth. *Id.*

As discussed above, the district court conducted a *Franks* hearing. Based in part on probation officer O'Keefe's testimony at that hearing, the district court concluded that O'Keefe ·was not trained as a law enforcement officer and was therefore "careless[ ]" in how she took notes. Further, the district court stated: "It was simply not good practice and good procedure to have someone swear to an affidavit who had absolutely no personal knowledge of the facts." The court decided that any false statements in the affidavit were a result of these mistakes and other misunderstandings, and that these mistakes and misunderstandings did not arise to a deliberate or reckless disregard for the truth.

Whether a person acted deliberately or recklessly is a factual question of intent, and we therefore review the court's decision for clear error. *See United States v. Moore,* 968 F.2d 216, 220–21 (2d Cir.1992) (district court's factual determinations during *Franks* hearing are reviewed for clear error); *cf. In re Bonnanzio,* 91 F.3d 296, 301 (2d Cir.1996) (bankruptcy court's determination whether debtor acted intentionally or recklessly is a factual question of intent which is reviewed for clear error); *Twin Peaks Productions v. Publications Int'l, Ltd.,* 996 F.2d 1366, 1382 (2d Cir.1993) (a district court's determination of whether a person acted intentionally or recklessly is reviewed for clear error).

We agree that O'Keefe should have made notes about her conversations with Johnson at an earlier time. We also agree that the person preparing the affidavit should have had at least some personal knowledge of what had transpired. However, we do not conclude that the district court made a clear error when it held that the statements in the warrant affidavit were not made in a deliberate or reckless disregard for the truth. The district judge heard officer O'Keefe's explanation and found her credible. That finding is not clearly erroneous and we will not upset it. We conclude that the challenged statements were properly included in the warrant affidavit.

Trzaska also argues that the government deliberately or recklessly failed to disclose that it made two visits to his apartment before applying for the warrant. Trzaska argues that the warrant affidavit makes it clear that the probation officers made the routine home visit, but that the government failed to make it clear that the officers then left his apartment and returned later to conduct the "plain view" search.[2] Assuming that Trzaska is correct—that the government improperly failed to reveal that it left Trzaska's apartment and then returned to conduct the "plain view" search—*Franks* instructs that we should disregard the false statements and then determine whether the remaining portions of the warrant affidavit would create probable cause. *See Franks,* 438 U.S. at 171–72, 98 S.Ct. at 2684–85. We have done just that. In the previous subsection we disregarded the evidence seized in the "plain view" search (because the search was illegal) and determined that the remaining portions of the warrant affidavit would create probable cause to search Trzaska's apartment and garage.

### III. *The Commerce Clause*

Trzaska contends that 18 U.S.C. § 922(g) is beyond Congress' commerce power be-

---

**2.** The affidavit stated:
Upon entering the defendant's apartment [to conduct a routine home visit], the officers immediately observed trays and jars filled with ammunition and empty shell casings. As a result, the officers conducted a "plain view" search of the Apartment Premises and removed....

The district court concluded that the affidavit "made it appear that the Probation Officers had seized the items in plain view during the initial home visit and failed to apprise the United States magistrate judge that the items listed were seized in a subsequent forcible warrantless entry." *Trzaska,* 866 F.Supp. at 105.

cause the section does not require that "interstate commerce" be affected, but instead requires only that "commerce" be affected. *See United States v. Lopez,* 514 U.S. 549, ————, 115 S.Ct. 1624, 1630–34, 131 L.Ed.2d 626 (1995) (holding that 18 U.S.C. § 922(q), which prohibited possession of a firearm in a school zone, was beyond Congress' commerce power). However, we have already held that Section 922(g) "avoids the constitutional deficiency identified in *Lopez* because it requires a legitimate nexus with interstate commerce." *United States v. Sorrentino,* 72 F.3d 294, 296 (2d Cir.1995); *see also United States v. Carter,* 981 F.2d 645, 647 (2d Cir.1992) ("The phrase 'in or affecting commerce' has become a jurisdictional term of art that indicates a Congressional intent to assert its full Commerce Clause power."); *United States v. Sanders,* 35 F.3d 61, 62 (2d Cir.1994) (per curiam) (same). Therefore, we reject Trzaska's argument.

Trzaska also argues that even if section 922(g)(1) is constitutional, the connection to interstate commerce was not established in this case. However, section 922(g)(1) "applies to a possession of a gun that previously moved in interstate commerce." *Carter,* 981 F.2d at 647 (quotation omitted); *Sanders,* 35 F.3d at 62. Because Trzaska stipulated that the firearms and ammunition at issue in this case had been shipped or transported in interstate commerce, Trzaska has waived this argument.

## IV. *Ineffective Assistance of Counsel*

Finally, Trzaska argues that he received ineffective assistance of counsel. To establish ineffective assistance of counsel, Trzaska must establish that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that his counsel's deficient performance actually prejudiced his defense. *See Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984); *United States v. Hurtado,* 47 F.3d 577, 583 (2d Cir.1995). Trzaska lists three deficiencies in his counsel's performance.

First, Trzaska argues that his trial counsel unreasonably elicited his statement to Kevin, which opened the door to the admission of

his inconsistent statement to O'Keefe. Our decision that the statements were not inconsistent renders this claim moot.

Trzaska also complains that his trial counsel unreasonably failed to argue that there was an illegal search when Johnson stole one of Trzaska's catalogs at the government's direction. However, according to her testimony, Johnson did not steal the catalog. She found it in her mailbox. Failure to make an argument unsupported by evidence can hardly be termed ineffective assistance of counsel.

Trzaska also claims that his trial counsel's performance was ineffective because his counsel failed to argue that 18 U.S.C. § 922(g)(1) was unconstitutional. However, because our prior holdings made it clear that the statute was constitutional, Trzaska's trial counsel did not unreasonably fail to raise the argument.

Therefore, we conclude that Trzaska did not receive ineffective assistance of counsel.

## CONCLUSION

Trzaska's conviction is reversed and the case is remanded for a new trial.