*United States v. Hernandez*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of January, two thousand twenty-four.

PRESENT:

> REENA RAGGI,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> *Circuit Judges*.

———————————————————————————

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                                                    No. 22-471

BASILIO HERNANDEZ,

*Defendant-Appellant*.

———————————————————————————

For Defendant-Appellant:     TINA SCHNEIDER, Portland, ME.

For Appellee:     SEAN C. ELDRIDGE, Assistant United States Attorney, *on behalf of* Trini E. Ross, United States Attorney for the Western District of New York, Rochester, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Frank P. Geraci, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 2, 2022 judgment of the district court is **AFFIRMED**.

Basilio Hernandez appeals from a judgment of conviction following a jury trial in which he was convicted of conspiracy to possess with intent to distribute heroin, fentanyl, and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), and 846. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

I.     **Search Challenge**

Hernandez principally challenges the search warrant that officers executed when they uncovered narcotics in his vehicle. Before obtaining that warrant, the affiant – investigator Joseph Briganti of the Rochester Police Department –

2

received a tip from a longtime informant who claimed to have seen individuals placing heroin in a white BMW parked in a driveway on Hernandez's street. Briganti immediately passed this tip along to another officer, who went to the street and confirmed that a white BMW was indeed parked in a driveway on the referenced street and covered by a tarp. Two more officers soon arrived at the scene with a drug-sniffing dog. One of the officers walked up the driveway, lifted the tarp, and obtained the car's Vehicle Identification Number ("VIN") from the bottom corner of the windshield. The other officer then performed a drug search with the dog, who alerted the officers to the presence of drugs in the car. Within hours, Briganti prepared a warrant application and submitted it to a county court judge, who approved it. The officers executed the warrant that same day and found a large quantity of heroin (as well as cocaine and fentanyl) in the vehicle. Hernandez was later arrested and indicted on federal narcotics trafficking charges.

Hernandez then moved to suppress evidence of those narcotics, asserting two principal challenges to the warrant. First, Hernandez argued that the warrant was invalid because the lifting of the tarp and the K-9 sweep were warrantless searches within his home's "curtilage" in violation of the Fourth Amendment. Second, he argued that the warrant's affidavit – prepared by

3

Briganti – contained multiple mistakes and omissions that rendered the warrant invalid under *United States v. Leon*, 468 U.S. 897, 923 (1984) (holding that a warrant is invalid – and that its fruits must be suppressed – if the affiant knowingly or recklessly "misled" the magistrate judge with false information in the affidavit). After an evidentiary hearing before a magistrate judge, the magistrate judge and district judge both concluded that the lifting of the tarp and the canine sniff were unlawful searches in light of *Collins v. Virginia*, 138 S. Ct. 1663 (2018), and that the warrant was not otherwise supported by probable cause because of inaccuracies in Briganti's affidavit and its lack of clarity as to the source of certain affidavit information.[1]  Nevertheless, the district court found that the good-faith exception to the exclusionary rule applied and denied Hernandez's motion to suppress.

On appeal, Hernandez argues that the warrant's purported defects were the product of bad faith, and therefore the district court erred when it relied on the good-faith exception to deny his suppression motion.  We review *de novo* the district court's application of the legal standard for the good-faith exception, *see United States v. Raymonda*, 780 F.3d 105, 113 n.2, 153 (2d Cir. 2015), and review the

---

[1] The government does not challenge these conclusions on appeal, and, thus, we do not review them further.

4

district court's "underlying factual findings" for clear error, *United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013); *United States v. Trzaska*, 111 F.3d 1019, 1028 (2d Cir. 1997).

We first take up Hernandez's challenges to the errors in the affidavit. The Supreme Court has identified an exception to the exclusionary rule, under which courts will not suppress evidence obtained pursuant to an invalid warrant so long as the officers relied on that warrant in good faith. *See Leon*, 468 U.S. at 922. Though the government has the burden of showing that the officers acted in good faith, "most searches conducted pursuant to a warrant" will meet that bar. *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011). Indeed, we have long recognized that "[e]very statement in a warrant affidavit does not have to be true," *Trzaska*, 111 F.3d at 1027, and that "minor overstatements or simple negligence by the police" are not enough to overcome the good-faith exception, *Raymonda*, 780 F.3d at 120. To the contrary, errors in an affidavit can overcome the good-faith exception only if they were the product of "deliberate," "reckless," or "grossly negligent" error. *Id.*

Hernandez claims that Briganti's errors rose to at least that level here, and that the district court erred when it concluded otherwise. Because the district

5

court's finding went to Briganti's state of mind, we must review it for clear error. *Rajaratnam*, 719 F.3d at 153. But despite the laundry list of purported mistakes identified by Hernandez, we discern no such error here. Hernandez asserts, for instance, that the affidavit incorrectly stated that another officer was present when Briganti spoke to the informant, that the informant told Briganti the car's VIN and year, that the informant told Briganti that the car was parked at a specific address, and that officers corroborated the location of the car without entering the driveway. Hernandez also points to what he believes to be key omissions from the affidavit, such as the fact that an officer identified the car's VIN by lifting a tarp covering it and that the car was parked toward the back of the driveway.

But Hernandez raised these very arguments to the district court, which rejected them in light of Briganti's testimony during the evidentiary hearing. Instead, the district court (like the magistrate judge who observed Briganti's testimony and demeanor firsthand) determined that the errors in the affidavit were not knowingly or recklessly misleading, but likely the result of Briganti "rushing to complete the warrant package" in order "to ensure that law enforcement could act quickly before the narcotics were moved or hidden." App'x at 140, 155–56. The district court recognized that parts of the affidavit were

6

summaries of information that Briganti had received from the informant and other sources, which plausibly explained why the affidavit was not clear as to precisely what the informant told Briganti. Also, as Briganti clarified, he had simply mixed up smaller details, such as whether the informant told him that the BMW had no *license plates* or that it had no *registration*, whether he initially obtained the VIN from a *police database* or whether he obtained it from another *officer* and only later confirmed it on the database, and whether the BMW was parked three *houses* from the end of the street or at the neighboring *duplex* that was three *doors* from the end of the street.

We see no reason to disturb the district court's findings that these errors were at most negligent, especially when none of the purported mistakes were "clearly critical" to assessing the legality of the search. *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996) (quoting *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991)). Importantly, Briganti disclosed to the issuing magistrate judge all facts material to the warrant – the white BMW tip, the corroboration by an officer on-scene, and the positive drug alert from the K-9. *See* App'x at 39–40. Though the affidavit may have been "poorly worded" and misstated peripheral details, *id.* at 140, the record does not compel a finding of bad faith, especially because the

7

magistrate judge who heard Briganti testify and the district judge on further review credited Briganti's explanation for the inconsistencies. *See Raymonda*, 780 F.3d at 120 (finding good faith even when the affidavit reflected multiple errors that "exaggerated the significance of [the] evidence" and likely "contributed to the issuance of an invalid search warrant").[2]

Beyond Briganti's purported errors, Hernandez also argues that the good-faith exception should not apply because the warrant affidavit included information obtained by searching his car while it was parked in a driveway next to his home, which intervening precedent rendered impermissible. *See Collins* 138 S. Ct. at 1675.

But the law is clear that even when an affidavit includes information obtained from an unlawful search, the good-faith exception still applies so long as (1) the officers had "no significant reason to believe that their predicate act was

---

[2] Hernandez also maintains that the district court applied the wrong legal standard for the good-faith exception. *See* Hernandez Br. at 25–26 (arguing that the district court failed to recognize that *gross* negligence could also overcome the good-faith exception). Hernandez fails to mention, however, the many instances where the district court expressly acknowledged that a finding of gross negligence would be sufficient to justify suppression of the evidence. *See, e.g.*, App'x at 157 ("[I]t is well[-]established that allegations of negligence or innocent mistakes are insufficient . . . ."); *id.* at 158 ("There is simply no evidence to show that the conduct here rose to a level to constitute deliberate or grossly negligent behavior . . . ."); *id.* at 154 ("Defendant contends . . . that the cumulative effect of Briganti's conflicting testimony evidences more than mere negligence in drafting the affidavit . . . .").

indeed unconstitutional," and (2) the officers "apprise[d] the magistrate judge of the pertinent facts" of their conduct so that the magistrate judge could assess its legality. *See United States v. Ganias*, 824 F.3d 199, 223–25 (2d Cir. 2016) (*en banc*) (internal quotation marks omitted). *Collins* was decided in 2018, and its holding was not "previously established" when officers conducted the search of Hernadez's car in 2017. *Raymonda*, 780 F.3d at 119. Moreover, as noted above, the officers forthrightly apprised the magistrate judge that the vehicle was parked "in the driveway" and that a K-9 team "conduct[ed] a drug search on the exterior of said vehicle." App'x at 39–40.

To be sure, the warrant affidavit did not mention that an officer entered Hernandez's driveway in order to lift up a tarp on his car to check its VIN. *See* Hernandez Br. at 24. But we fail to see how that omission could constitute bad faith. The VIN appears to be a collateral piece of information in the affidavit that was not "critical" to the probable cause determination. *Reilly*, 76 F.3d at 1280 (quoting *Rivera*, 928 F.2d at 604). The warrant does not, for instance, assert that officers corroborated the informant's tip by matching up the VIN. In sum, we see no error in the district court's conclusion that the good-faith exception applied; we

9

therefore affirm its denial of Hernandez's motion to suppress the evidence found in his vehicle.

## II. *Brady/Giglio* Challenge

Hernandez also challenges various aspects of the district court's *in camera* review of potential *Brady* and *Giglio* material. In the run-up to trial, the government submitted *ex parte* motions to the district court requesting that it review *in camera* the disciplinary records of several officers who were planning to testify. The district court then confirmed that the government did not need to turn over those records, without ever disclosing the fact of the *in camera* review to Hernandez.

Hernandez first argues that this review was erroneous because he should have received copies of the disciplinary records so he could weigh in on whether they were subject to disclosure under *Brady* or *Giglio*. But our cases clearly foreclose this argument. "The nature of [*in camera*] proceedings precludes the defendant's participation: Where the very question at issue is whether the prosecution is obliged to reveal certain material to the defendant, the inquiry

cannot begin by revealing that material to the defendant." *Contreras v. Artus*, 778

F.3d 97, 114 (2d Cir. 2015).

Next, Hernandez asserts that remand is appropriate because the district

court failed to notify him that it would be performing an *in camera* review.

Although the district court correctly recognized that "the existence of the

government's applications should have been visible to [Hernandez]" on the public

docket, App'x at 160 n.1; *see United States v. Yousef*, 327 F.3d 56, 167-68 (2d Cir.

2003) (noting that public docketing of the existence of sealed proceedings and

materials is required),[3] that procedural error was harmless and does not warrant

remand. As discussed, Hernandez had no right to participate in the *in camera*

review, so any lack-of-notice could not have prejudiced him. *See United States v.*

*Abrams*, 357 F.2d 539, 550 (2d Cir. 1966) (explaining that there cannot be prejudice

if a claimed right to participate would not have made "one iota of difference").

And, after Hernandez became aware of the *ex parte* proceedings and filed a motion

to unseal the disciplinary records, the district court ultimately repeated the *in*

*camera* review a second time "out of an abundance of caution," App'x at 162, before

---

[3] Despite the district court's directive for the clerk of court to update the public docket to reflect the existence of the government's sealed submissions, the docket has not yet been updated, a matter that the district court should rectify.

11

concluding that the government was not required to disclose the records to Hernandez.

We do not see a need to remand so that the district court can do a third round of *in camera* review. A defendant challenging a district court's decision to keep *in camera* materials sealed must offer more than "unsupported speculation that the file might include . . . material evidence." *United States v. Leung*, 40 F.3d 577, 583 (2d Cir. 1994). Hernandez only conclusorily asserts that impeachment material regarding Briganti would have changed the outcome of his suppression hearing. *See* Hernandez Br. at 44. But even if that were true, Hernandez acknowledges that Briganti was not one of the three witnesses whose disciplinary records were the subject of the district court's *in camera* review. Because Hernandez offers no explanation as to how those records could have altered the outcome of his case, we decline to remand for a third *in camera* review when we have no "basis for questioning the [d]istrict [c]ourt's determinations as to materiality." *Leung*, 40 F.3d at 583.

\*       \*       \*

We have considered Hernandez's remaining arguments and find them to be

without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court