NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 22 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-30191 |
| Plaintiff-Appellee, | D.C. No. 9:21-cr-00028-DLC-1 |
| v. | |
| TAUREAN JEROME WEBER, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted February 9, 2024
Portland, Oregon

Before: GOULD, BYBEE, and BRESS, Circuit Judges.

Taureen Weber was convicted of eight counts of transportation, distribution,

and receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1),

2252(a)(2), following a jury trial. Police began investigating Weber after

Instagram submitted a series of CyberTips through the National Center for Missing

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

and Exploited Children ("NCMEC") indicating that Instagram accounts later identified as belonging to Weber contained child pornography. On appeal, Weber argues the district court erred in denying his motion to suppress evidence because a detective viewed the media attached to the CyberTips without a warrant. He also contends the district court erred in denying his motion to dismiss on speedy trial grounds and by permitting the government to ask guilt-assuming hypotheticals to certain witnesses. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. We affirm the district court's denial of Weber's motion to suppress. "In reviewing a denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Rosenow*, 50 F.4th 715, 728 (9th Cir. 2022) (citation omitted), *cert. denied*, 143 S. Ct. 786 (2023). On appeal, Weber presses only a *Jones*-style trespass theory of the Fourth Amendment and does not argue that he had a reasonable expectation of privacy in the contents of his Instagram account.

We need not decide whether the trespass theory applies to searches of electronic information, because the disclosure of Weber's media by Instagram to the government was licensed pursuant to Instagram's Terms of Service. *See Florida v. Jardines*, 569 U.S. 1, 7–8 (2013); *United States v. Esqueda*, 88 F.4th

2

818, 830 (9th Cir. 2023). Instagram's license here was clear that it would extend to the dissemination of certain information to law enforcement. As a condition to using Instagram, a user must agree to Instagram "shar[ing] information about misuse or harmful content with other Facebook Companies or law enforcement." This is not a blanket Fourth Amendment waiver. Instead, when Instagram learns of "harmful" or "deceptive" behavior, it is authorized by the Terms of Service to share that information with law enforcement. Even then, the government may access only the information collected by Instagram—it may not conduct its own, free-roaming search of a user's account. We offer no opinion on more general terms of service, nor do we consider a license's effect under a reasonable-expectation-of-privacy theory.

Alternatively, the good-faith exception applies even if there was a search. "The good-faith exception precludes suppression of evidence seized by officers who acted 'in objectively reasonable reliance' on a search warrant that is later declared invalid." *United States v. Artis*, 919 F.3d 1123, 1133 (9th Cir. 2019) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). We previously held that the good-faith exception did not apply where "[t]he constitutional error was made by the officer[,] . . . not by the magistrate," *United States v. Vasey*, 834 F.2d 782, 789 (9th Cir. 1987), but "the Supreme Court's precedent . . . has shifted somewhat

3

since we decided *Vasey*[,]"; *see generally Herring v. United States*, 555 U.S. 135 (2009).

In *Artis*, we recognized that the good-faith exception is not "categorically inapplicable whenever a search warrant is issued on the basis of evidence illegally obtained as a result of constitutional errors by the police." *Artis*, 919 F.3d at 1133. Rather, the proper inquiry is "whether the police misconduct that led to discovery of the illegally obtained evidence is itself subject to the good-faith exception. If it is, suppression of the evidence seized pursuant to the warrant will not be justified." *Id.*

In this case, Detective Hall reasonably relied on the CyberTip report that indicated Instagram had viewed the media attachments. Acting in reliance on this information, as well as training she had received on Instagram's policies and practices, Detective Hall viewed the media believing that she was not exceeding the scope of Instagram's search vis-à-vis the private search doctrine. Additionally, she viewed the images prior to our holding in *Wilson*, which requires the government to demonstrate that a human being viewed the attachments in the CyberTip for the private search doctrine to apply. *United States v. Wilson*, 13 F.4th 961, 971–72 (9th Cir. 2021). Thus, the good-faith exception applies.

2. Weber also challenges the district court's denial of his motion to dismiss for a Speedy Trial Act violation. "We review the district court's interpretation and application of the Speedy Trial Act de novo, and . . . [its] findings of fact for clear error." *United States v. Medina*, 524 F.3d 974, 982 (9th Cir. 2008).

In general, "the Speedy Trial Act requires that a criminal trial begin within seventy days from the date on which the indictment was filed." *United States v. Olsen*, 995 F.3d 683, *as amended* 21 F.4th 1036, 1040 (9th Cir. 2022) (per curiam) (citing 18 U.S.C. § 3161(c)(1)). However, "the Act includes a long and detailed list of periods of delay that are excluded in computing" those seventy days, *Zedner v. United States*, 547 U.S. 489, 497 (2006), including delays resulting from "pretrial motions, the unavailability of essential witnesses, and delays to which the defendant agrees." *Olsen*, 21 F.4th at 1040–41; *see* 18 U.S.C. § 3161(h).

Weber contends that the district court violated the Speedy Trial Act by setting a trial date that would have been outside of the seventy countable days had the government not filed an additional motion that "stopped the clock." The district court acknowledged that "it inadvertently set [the trial] for a date outside of the [then-]remaining 70-day period," but found that the timing of the government's motion ultimately resulted in a trial date in accordance with the Act.

5

The text of the Speedy Trial Act does not provide a basis for a violation unless a defendant "[wa]s not brought to trial within" seventy countable days. 18 U.S.C. § 3161(a)(2). Both parties agree that Weber was brought to trial within seventy countable days, so Weber has no basis to claim a Speedy Trial Act violation. Weber's argument that a potential violation equates to an actual violation is unpersuasive. Further, Weber did not oppose the government's "fortuitous" motion that stopped the clock. The unopposed continuance fell squarely within the excludable category of "delays to which the defendant agrees." *Olsen*, 21 F.4th at 1040–41. The discovery of a near-violation is not actionable under the Speedy Trial Act.

3. Lastly, Weber contends that the district court erred in allowing the government to ask guilt-assuming hypotheticals to certain witnesses. "[I]t is error for the prosecution to ask questions on cross-examination that assume the defendant's guilt of the precise acts for which he is on trial." *United States v. Shwayder*, 312 F.3d 1109, 1120 (9th Cir. 2002). We assume without deciding that the guilt-assuming hypotheticals were error, but we conclude that the errors were harmless.

Because guilt-assuming hypotheticals implicate due process concerns, the government bears the burden of demonstrating that any error was harmless beyond

6

a reasonable doubt. *United States v. Evans*, 728 F.3d 953, 959 (9th Cir. 2013).

Contrary to Weber's contentions that these witnesses were critical to his defense, we conclude that whatever harm these hypothetical questions might have inflicted on Weber's credibility was eclipsed by the government's overwhelming evidence of Weber's guilt. We are persuaded that the jury would have convicted Weber even in the absence of these statements given the thousands of images and videos of child pornography located in his home office, the government's evidence connecting the Instagram accounts to his email accounts, as well as the IP address information related to his electronic devices. The witnesses—who had close personal relationships with Weber—had no firsthand knowledge of the facts underlying the offense, and their testimony about Weber's good moral character was of minimal probative value. Therefore, any error was harmless.

For these reasons, we **AFFIRM** the judgement of the district court.